# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LINDA HOPPE and JERRY BROWN,** individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) No. 06 C 3026 |
| v. | )<br>) Magistrate Judge Jeffrey Cole |
| **GREAT WESTERN BUSINESS SERVICES, LLC,** doing business as GWBS, and JOHN DOES 1-10, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiffs have requested that I "enforce" the class action settlement agreement that the parties concede they entered into in 2006. By this they mean that I should order Great Western Business Services, LLC (GWBS) to honor that aspect of the settlement agreement requiring it to seek an order from the district court preliminarily approving the settlement. The motion thus seeks "specific performance, that is, a mandatory injunction to perform." *American Hosp. Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 594 (7th Cir. 1986)(Posner, J.). *See also Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1225 (7th Cir.1993). While plaintiffs' motion does not explicitly seek a finding that the settlement agreement is still binding between the parties, the requested relief cannot be granted if the agreement is no longer operative.

The defendant has objected to the motion on the ground that it made such an application to Judge Norgle in 2007 and that the motion was denied. Hence it has fully performed and cannot be required to make a second application. In addition, and more importantly, it contends that when Judge Norgle "denied" the motion for preliminary approval of the settlement agreement, the

"condition subsequent" that was essential to the continuing validity of the agreement – namely approval of the settlement agreement – not having occurred, the agreement is no longer binding on the parties. (*GWBS Response in Opposition to Motion to Enforce Class Action Settlement* at 4)("*GWBS Response*"). The plaintiffs describe the denial as "a technicality" and they take issue with the characterization of the condition as a condition subsequent.

But the real question in this case is interpretive not taxonomic. It is certainly not whether judicial approval of a motion for preliminary approval of a class action settlement is a condition subsequent or a condition precedent, for however the condition is denominated, Rule 23, Federal; Rules of Civil Procedure, requires the court's imprimatur. Rather, the question is whether an order that in form is a denial of a motion for preliminary approval but which in substance merely postpones the merits-based consideration required by Rule 23 because of a perceived procedural irregularity was intended by the parties to end the agreement. As discussed below, to answer that question in the affirmative requires a construction of the settlement agreement that is neither rational, probable, nor consonant with common sense, which "'is as much a part of contract interpretation as is the dictionary or the arsenal of canons.'" *Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1119 (7th Cir.2002)(Posner, J.). *See discussion, infra* at 8.

## FACTUAL BACKGROUND

This case began in the Circuit Court of Cook on May 3, 2006, when plaintiffs filed a class action complaint alleging that GWBS sent out unsolicited facsimile advertising in Illinois in violation of the Telephone Consumer Protection Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. GWBS removed the case to the United States District Court for the Northern District of Illinois and on June 15th forwarded the complaint to its insurance carrier, Valley Forge

Insurance Company, requesting that it be defended and indemnified under its commercial general liability and excess liability insurance policies. (*GWBS's Response*, Ex. 1, Affidavit of A. Colin Wexler at ¶ 2)("GWBS's Response").

This was the first of a series of letters which Valley Forge dealt with by ignoring them. Two-and-a-half months would pass in silence. Understandably frustrated and anxious, Mr. Wexler, counsel for GWBS, sent a virtually identical letter enclosing his previous letter and another copy of the complaint on September 1st. Two more weeks would pass before Valley Forge responded with a letter stating that the carrier had a number of similar requests for coverage and would be making a coverage determination. (*Id.* at ¶¶3-5). In ensuing telephone conversations, Mr. Wexler informed the carrier that the plaintiffs were interested in pursuing settlement and that his client was also interested in pursing settlement discussions. A specific request for prompt response from the carrier was made by Mr. Wexler so that the carrier could be included in settlement discussions. (*Id.* ¶6).

Several more weeks passed in silence, prompting Mr. Wexler to phone the carrier on October 9th. Mr. Wexler again importuned the carrier to make a coverage determination so that his client would know its level of coverage. Although Valley Forge's "claims consultant" said he would "expedite" Valley Forge's consideration of GWBS's claim, nothing happened. A week later, Mr. Wexler sent another letter to Valley Forge expressing concern that GWBS's position was being prejudiced by Valley Forge's apparent insouciance. Mr. Wexler set a deadline of October 27th for a reply and said that in the absence of a reply, GWBS would assume that Valley Forge had "abandoned [its] insured and [would] not provide a defense or indemnification. . . ." (*Id.* at ¶9).

There was no response by October 27th or even by November 8, 2006. (*Id.* at ¶11). On the 8th, Mr. Wexler informed Valley Forge that his client would be making a settlement offer and that

3

the time for waiting had passed. He said that in light of Valley Forge's failure to have acted responsibly in connection with the handling of the claim that had been made and remade, GWBS had assumed that coverage for the suit was denied. (*Id.* at ¶¶11-12).[1] Also on the 8th, the plaintiffs sent a settlement offer to GWBS that was forwarded to Valley Forge. Still without a response from Valley Forge, on November 29th GWBS made a counter offer to the plaintiffs. (*Id.* at ¶¶13-14).

The original offer of November 8th envisioned a payment from GWBS of $1.8 million to cover some 6,500 improper facsimile advertisements GWBS allegedly sent to Illinois residents on December 12, 2005. (*Id.* at ¶12, Ex. 7). On November 29, 2006, GWBS sent plaintiffs a counter-offer that would increase the class by adding nearly 40,000 class members in order to cover the approximately 45,000 advertisements sent to ten states on the 12th. (*Id.* at ¶ 14; Ex. 9). The amount of settlement was increased from $1.8 million to $3.0 million, which represented a decrease in the settlement amount per plaintiff from $280 to $67. Plaintiffs accepted the proposal the same day.

Astonishingly, by December 21st, six months had elapsed and Valley Forge had not meaningfully responded to GWBS's entreaties. Finally, on that date, Valley Forge's lawyer wrote and said that the carrier would be issuing "shortly" a letter *denying* coverage in its entirety. (*Id.* at ¶15). Despite all that had occurred, GWBS sent a draft of the settlement agreement to Valley Forge on November 29th. (*Id.* at ¶16; *see also Plaintiffs' Motion to Enforce Class Action Settlement*, Ex.

---

[1] "[I]nferences from silence are perilous", Posner, Cardozo: A Study In Reputation, 37 (1990). But not always, and not here. *See C.L. Maddox, Inc. v. Coalfield Services, Inc.* 51 F.3d 76, 81 (7th Cir. 1995)(Posner, J.)("We are mindful of the standard formula. . . that an anticipatory breach occurs only when a party makes a clear and unequivocal statement of his intention to break the contract when his performance comes ...We have no quarrel with the formula. But obviously it is meant for cases in which the claim of anticipatory repudiation is based on a statement. Here...the claim is based on silence in the face of a request for the equivalent of assurances. We find nothing in the cases to suggest that a party who, having begun to perform his side of an incompletely specified contract. . .develops a reasonable basis . . . for thinking the other party to the contract will not perform may not act on that knowledge and cut its losses.").

A).

On January 5, 2007, GWBS agreed to all of the terms proposed by the plaintiff and the settlement was fully documented. (*Id.* ¶18). What motivated Valley Forge to take the next step is unknown. But a week later, it sent a letter offering to defend GWBS under a reservation of rights.

On January 29th, the plaintiffs filed a motion before Judge Norgle for preliminary approval of the class action settlement. (*Plaintiffs' Motion to Enforce Class Action Settlement*, Ex. B). The motion contained a provision noting the parties' stipulation to a certification of the settlement class consisting of all businesses and individuals to whom defendant faxed advertisements on or about December 12, 2005 without permission and absent a business relationship with the recipient. (*Motion*, at 2, ¶4(a)). The motion went on to explain why the agreement passed muster under Rule 23(a). *See Id.* at 2-7. [2] The motion, however, defined a class broader than that in the complaint.

Unhappy with the settlement GWBS made, Valley Forge moved to intervene on February 1, 2007. At this point, the parties realized that the class as defined by the settlement agreement did not match the narrower class in the complaint. Thus, on February 5th, plaintiffs and GWBS stipulated to the filing of an amended complaint which expanded the class from only those having an Illinois fax number to anyone with a fax number who received the prohibited communication in any state. [Docket No. 34].

In mid April, 2007, with the motion for preliminary approval pending, Judge Norgle granted the motion to intervene over the strenuous objections of the plaintiffs and GWBS. Valley Forge filed its intervenor complaint a month later and filed an opposition to the settlement on August 8th.

---

[2] Mr. Wexler's letter to the plaintiff's lawyers on November 29, 2006 made specific reference to entry of judgment "in favor of Plaintiffs and the settlement class," which shall consist of 40,000 individuals. (*Motion to Enforce Class Action Settlement*, Ex. A).

GWBS filed a reply in support of the motion for preliminary approval two weeks later on August 22nd. [Docket No.92].[3] The reply brief was directed to the settlement agreement of the amended class action complaint that had been filed by stipulation on February 5th.

The situation now confronting Judge Norgle was, in his view, procedurally irregular. Because of the sequence in which the motion for preliminary approval and the amended complaint were filed, he understandably assumed the motion for preliminary approval was based on the Illinois class in the original complaint, rather than the amended complaint, which had deleted the Illinois qualifier. Faced with this apparent mismatch and sensitive to the principle that when an amended complaint is filed, the prior pleading is withdrawn and the amended pleading is controlling, *Johnson v. Dossey*, _F.3d_, 2008 WL 364590, at *1 (7th Cir. 2008), Judge Norgle on August 23rd denied the motion for preliminary approval on mootness grounds. Judge Norgle's carefully worded order makes luminously clear that he was neither approving nor disapproving the settlement agreement, but was merely postponing any merits-based evaluation because of a perceived procedural irregularity. Here is how Judge Norgle phrased it:

> On 2/5/2007, the parties stipulated that plaintiff would file an Amended Complaint instanter. The original complaint is thus *functus officio*. Plaintiff's Motion for Preliminary Approval of Class Action Settlement Agreement and Notice to Class 25, file[d] 1/29/2007, is *therefore* denied as moot. However, the court grants plaintiff leave to file another such motion if it is appropriate to do so at this point.

(Emphasis supplied).

The *functus officio* language appears routinely in opinions of the Courts of Appeals to describe the status of a complaint after the filing of an amended complaint. *See e.g., 188 LLC v.*

---

[3] Mr. Wexler's reply brief recounted in detail how, despite GWBS's having "literally begged" Valley Forge to honor its obligations under the policy, it had been left in the lurch for months on end. (*Reply*, at 6). And then, when it finally did respond, the news could not have been worse: coverage was to be denied.

6

*Trinity Industries, Inc.*, 300 F.3d 730, 736 (7th Cir. 2002)("'An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and becomes *functus officio*'."); *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir.1955); *Jet, Inc. v. Sewage Aeration Systems*, 223 F.3d 1360 (Fed.Cir. 2000); *Kelley v. Crosfield Catalysts*, 135 F.3d 1202 (7th Cir. 1998); *Dugan v. Martin Marietta Aerospace*, 760 F.2d 397 (2nd Cir. 1985). It is language Judge Norgle has used before. *See Clark v. Fairbanks Capital Corp.*, 2003 WL 21277126 at *5 (N.D.Ill. 2003)(where a pleading is "*functus officio*," it "has no legal effect").

On October 26, 2007, the plaintiffs filed a preliminary motion for class certification. On October 31, 2007, the plaintiffs and GWBS consented to jurisdiction here. [Docket No. 112]. 28 U.S.C. §636(c)(1).[4] The relationship of the parties has made settlement unfeasible, and GWBS has taken the position that in light of Judge Norgle's "denial" of the motion for preliminary approval the "condition subsequent"on which the agreement depended did not occur and thus its agreement with the plaintiffs is no longer binding.

## ANALYSIS

### A.

The plaintiffs have yet to take Judge Norgle up on his invitation to renew the motion for preliminary approval, even though it would have cured the procedural asymmetry that he found objectionable. Instead they have moved to enforce the settlement agreement. GWBS has conceded that the settlement agreement was "binding and fully enforceable." (*GWBS's Response in Opposition*, at 4-5). It insists, however, that it fully performed and that Judge Norgle's *denial* of the

---

[4] Since Valley Forge was dismissed by stipulation on November 5, 2007, there is unanimous consent and the concerns of *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 171 F.3d 1083, 1089 (7th Cir. 1999) are not implicated here.

7

motion for preliminary approval in August 2007 – regardless of the reason – voided the agreement and there is nothing more for it to do.

The soundness of a conclusion may often be tested by its consequences. Posner, Cardozo: A Study in Reputation, 118 (1990). *Cf. See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 741 (1985). An examination of the consequences that would follow upon adoption of the interpretation proposed by GWBS confirms its frailty. If GWBS is right, had Judge Norgle denied the motion for preliminary approval because of a violation of the local rules' specification of font size or spacing or because there had not been sufficient advance notice of the motion, or because of some mistaken calendar entry resulting in the plaintiffs missing the date (or being late for) presentation of the motion, or any other reason unrelated to the merits of the settlement, the agreement would be void and GWBS would be off the hook.

This sort of rigid textualism ill accords with basic contract principles and contravenes the obvious intent of the parties. Under Illinois law, contract terms are interpreted according to their plain meaning. *Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.3d 683, 687 (7th Cir. 2004). At the same time, words must also be viewed in context, and the contract must be considered as a whole in order to ascertain the parties' intent. The terms should be construed so that the contract is "fair, customary, and such as prudent persons would naturally execute," and is "rational and probable." *Id.* In other words, "'where a contract is susceptible to one of two constructions, one of which makes it one that "prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.'" *Sutter Ins. Co. v. Applied Systems, Inc.*, 393 F.3d 722, 726 (7th Cir. 2004).

8

One of Judge Posner's favorite themes is the mischief that results from resort to rigid textualism and abandonment of common sense in contract interpretation. *Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1119 (7th Cir. 2002).[5] Here is how he put it in *Beanstalk Group. Inc. v. AM General Corn*, 283 F.3d 856 (7th Cir. 2002):

> Beanstalk is correct that written contracts are usually enforced in accordance with the ordinary meaning of the language used in them and without recourse to evidence, beyond the contract itself, as to what the parties meant. . . . It is a strong presumption . . . ut it is rebuttable-here by two principles of contract interpretation that are closely related in the setting of this suit.
>
> *The first is that a contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek.* [citations omitted]. This is an interpretive principle, not a species of paternalism. . . . "If literalness is sheer absurdity, we are to seek some other meaning whereby reason will be instilled and absurdity avoided." *Outlet Embroidery Co. v. Derwent Mills* 254 N.Y. 179, 172 N.E. 462, 463 (1930)(Cardozo, C.J.). There is a long tradition in contract law of reading contracts sensibly; contracts-certainly business contracts of the kind involved here-are not parlor games but the means of getting the world's work done....

*Accord McMahon v. Chicago Mercantile Exchange*, 221 Ill.App.3d 935, 946, 582 N.E.2d 1313, 1320 (1st Dist. 1991)("'[L]anguage, though seemingly plain and clear, will not bear a literal interpretation if this leads to an absurd result.'"); *Wachta v. First Federal S&L Ass'n.*, 430 N.E.2d 708, 714 (1st Dist. 1981). *See also In re Comdisco, Inc.*, 434 F.3d 963 (7th Cir. 2006); *United States v. Barnett*, 415 F.3d 690 (7th Cir. 2005); *Bank of America, N.A. v. Moglia*, 330 F.3d 942, 946 (7th Cir. 2003). Thus, it is the beginning and not the end of analysis to note that Judge Norgle's order of August 23rd *denied* the motion for preliminary approval.

---

[5] *See also United States v. Sloan*, 505 F.3d 685, 695 (7th Cir. 2007)("To quote Mr. Justice Holmes, 'there is no canon against using common sense in construing [plea agreements] [which are contracts] as saying what they obviously mean.'")(Initial brackets in original).

9

**B.**

Acceptance of GWBS's argument that the August 23rd order rendered the settlement agreement void (*GWBS's Response in Opposition*, at 1, 5-6, 10), would thwart the manifest intent of the parties. *Wachta*, 430 N.E.2d at 714; 11 Williston, Contracts §31.7 at 317. It would result in a contract that was neither rational, probable, nor the kind that the sophisticated and accomplished lawyers in this case could have intended.[6] It is idle to suggest that the parties intended that GWBS's financial obligations under the agreement could be avoided so long as there was a ruling, *simpliciter*, on the motion for preliminary approval, regardless of the reason for the ruling. That would make neither common nor economic sense. *Dispatch Automation, Inc. v. Richards*, 280 F.3d at 1119. What the settlement agreement envisioned, as GWBS's brief concedes, was an "*evaluat[ion]* and approv[al] [of] the proposed settlement." (*GWBS's Response* at 5)(Emphasis supplied).

Evaluation means "to determine the significance, worth or condition of, usually by careful appraisal and study." Merriam Webster's Collegiate Dictionary (11th ed. 2003). It is in this sense that the word *evaluate* is used in judicial opinions. *See e.g., Williams v. Chrans*, 945 F.2d 926, 941 (7th Cir. 1991)("The Supreme Court has articulated the standard by which to evaluate the prosecutor's explanation"); *Bethea v. Robert J. Adams & Associates*, 352 F.3d 1125, 1132 (7th Cir.2003)("The validity of *Hines* may become an issue at that time...and there will then be a record upon which to evaluate the holding of that opinion."); *United States v. Walton*, 255 F.3d 437, 440 (7th Cir.2001)("The guideline in question does not define the terms sadistic,' 'masochistic' or 'violent

---

[6]The plaintiffs' counsel are among the most experienced and successful class action lawyers in Chicago. Mr. Wexler, GWBS's counsel, is a graduate of Yale University and the University of Michigan Law School (*cum laude*), was a contributing and associate editor of the Michigan Law Review and clerked for Judge Sifton in the Eastern District of New York. According to the Goldberg, Kohn website, "[a]n independent study of 88 of Chicago's largest law firms ranked Goldberg Kohn third overall based on our lawyers' academic credentials."

conduct,' and the district court made no effort to come up with a definition and to evaluate the image in question in light of it."); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999)("When...the application was given a genuine evaluation, judicial review is limited to [the administrative record]."); *Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985)(Posner, J.)(A request for injunctive relief is "evaluated according to definite standards").[7]

In the context of applications for judicial approval of class action settlements, a district court must exercise the highest degree of vigilance in scrutinizing the proposed settlement. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir.2006). That did not occur here. Rather, Judge Norgle purposely chose to postpone the evaluation required by Rule 23 because of a perceived procedural irregularity. While the order was formally a denial of the motion, in substance it merely deferred the required merits-based ruling that had to occur before GWBS was either required to perform or was absolved from further performance. GWBS's argument that the agreement came to an end when Judge Norgle "denied" the motion for preliminary approval is incompatible the basic principle that the substance of an order, not its form determines its effect. *See United Airlines Inc. v. U.S. Bank N.A.*, 406 F.3d 918, 924 (7th Cir 2005); *Pimentel & Sons Guitar Makers, . v. Pimentel*, 477 F.3d 1151 (10th Cir. 2007). *Cf., Di Santo v. Pennsylvania*, 273 U.S. 34, 43 (1927)(Brandeis, J.)("The logic of words should yield to the logic of realities." ). The reality is that Judge Norgle never denied the motion in the sense intended by the settlement agreement.

---

[7] Judge Posner has described the evaluative process as an "analytical procedure." *Walgreen Co v. Sara Creek Property Co. B.V.*, 966 F.2d 273, 276 (1992). So too is the evaluation of a motion for preliminary approval of a class action settlement. The relevant factors were discussed in GWBS's reply brief in support of the motion for preliminary approval. (*Reply* at 10).

11

## C.

The solution to the question raised by this case is not to be found in what the Supreme Court in another context has called the "bog of logomachy," *NLRB v. Seven-Up Bottling Co. of Miami*, 344 U.S. 344, 348 (1953), into which one is immersed in attempting to distinguish between conditions subsequent and conditions precedent. It is not uncommon for the phrase "condition subsequent" to be employed incorrectly. Professor Williston has cautioned:

> A condition subsequent has been defined as a future event upon the happening of which the agreement or obligations of the parties would be no longer binding. . . . The term "condition subsequent" as normally used in contracts in contrast to "condition precedent," should mean an event which occurs subsequent to a duty of immediate performance, that is, a condition which divests a duty of immediate performance of a contract after it has accrued and become absolute. *True conditions subsequent are very rare in the law of contracts. Often what looks like a condition subsequent in form is actually a condition precedent in effect.*
>
> \* \* \*
>
> What are generally called conditions subsequent in contracts are so called with little propriety. They are in substance conditions precedent to a duty of immediate performance and are subsequent only in form.

13 Williston On Contracts § 38:9-10, at 408-13 (4th ed. 2000)(Emphasis supplied). A condition precedent "must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies. *Id.* §38:7, at 394.[8]

Under the settlement agreement, GWBS's obligation to seek judicial approval was *unconditional*. It obviously was not dependant on some prior action by the district court. Rather,

---

[8] The Restatement (Second) of Contracts goes so far as to shun the labels "condition precedent" and "condition subsequent" and simply defines a "condition" as "an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224; Comment (e); *Heritage Bank & Trust Co. v. Abdnor*, 906 F.2d 292, 298 (7th Cir. 1990). What one might call a "condition subsequent," the Restatement terms an "Event That Terminates A Duty." Restatement (Second) of Contracts, § 230.

it was to bring about that action. However, its obligation to pay for notification to the class, concede judgment, and pay $3 million was conditioned on judicial approval of the agreement. It is not unlike Williston's example of an agreement between two parties that a contract executed by them should be void if a third party refuses to sign it. *Id.* §38:10, at 414. The third party signing it is a condition subsequent in form only. *Id.* It is actually a condition precedent. In one sense, then, judicial approval of the settlement agreement is a condition precedent since GWBS's financial obligations will not arise until then. In the last analysis, it is inconsequential whether approval is viewed as a condition precedent or subsequent. The result is the same: if the settlement agreement is ultimately *evaluated* and found wanting under Rule 23, GWBS will have no obligation to pay the agreed upon settlement or to do anything further. But until then, the agreement is alive and well.

### D.

Far from supporting GWBS's argument, *Collins v. Thompson*, 679 F.2d 168 (9th Cir. 1982), on which GWBS places almost exclusive reliance, demonstrates its invalidity. The facts are somewhat complicated; the governing principles are not. There, prisoners were seeking a reduction in the inmate population at one of the State of Washington's prisons. The parties arrived at a proposed consent decree – which is simply a form of contract – and the court gave it preliminary approval. The decree, however, contained an error in the dates for it to become operative.[9] The

---

[9] The date by which the state had to reduce the population at the prison was a month earlier than planned. The state submitted a revised decree with a later date, while the prisoners moved for approval of the decree with the earlier date, or in the alternative an amended notice to the class of the later date. The court denied both motions, finding there had been no meeting of the minds. *Id.* at 169. Next, the prisoners filed a notice with the court that they accepted the state's offer – the decree with the later date – and asked for preliminary approval of that form of the decree. The court granted their motion. *Id.* at 170. The court felt that the state's offer of the later date had neither been rejected nor revoked. *Id.* at 171-72. The state appealed, arguing, *inter alia*, that because a consent decree requires judicial approval, there is no binding contract until the court approves the parties' agreement.

13

Court of Appeals was emphatic in holding that as between the parties there was a legal and binding contract. Indeed, it said so twice. *Id.* at 172, 173. Neither party could back out before the court acted on a request for approval. *Id.* at 172. While the court called approval a condition subsequent, it left no doubt that judicial approval or disapproval of a class action settlement involves an evaluation – the very thing that has yet to occur here:

> There are two steps in reaching a settlement in a class action: (1) the parties by themselves reach an agreement of settlement, and (2) the court *evaluates* the proposed settlement. The reason for *judicial approval* is not to give the negotiating parties more time or even to ensure that the settlement is fair as between the negotiating parties, but rather to ensure that other unrepresented parties and the public interest *are treated fairly by the settlement.*

*Id.* at 172 (Emphasis supplied).

GWBS's attempt to liken its situation to that of a criminal defendant who pleads guilty pursuant to Fed.R.Crim.P.11(c)(5) is unpersuasive. The Rule provides that "[i]f the court rejects the plea agreement," the defendant ceases to be bound by the agreement and has the option to withdraw his plea. While the Supreme Court has referred to rejection as a condition subsequent, nothing in the structure of the Rule or in any case construing it, remotely suggests that *any* judicial failure to approve a plea agreement – even if not merits-based – triggers the option the Rule gives a defendant. That the Rule contemplates an *evaluation* of the plea agreement, not merely an action which postpones such a decision is apparent from *In re U.S.*, 503 F.3d 638, 641 (7th Cir.2007):

> Although judges sometimes may reject plea agreements with which the parties are satisfied, ordinarily they do so to protect the Judicial Branch's interests. For example, although [Rule] 11(c)(1)(c) allows the prosecutor and the defendant to agree on a sentence, Rule 11(c)(5) allows the judge to reject the bargain if the agreed sentence would be one the judge deems inappropriate. Similarly, a judge may reject a proposed consent decree in civil litigation if implementing the decree would create a drain on judicial resources or place the judiciary in an inappropriate position vis-à-vis other governmental bodies.

If GWBS's analysis is right, a defendant would be authorized to withdraw a plea under Rule 11(c)(5) even if the judge's ruling merely postponed an ultimate merits-based decision. Yet, we know that postponements are often necessary to "permit the judge to make an intelligent decision...." *In re U.S.*, 503 F.3d at 641. That is what Judge Norgle did, and that is all he did.

Finally, as in cases under Rule 23, a court evaluating a Rule 11(c)(5) plea has discretion. *Id.* Since all exercises of discretion require a consideration of the factors relevant to that exercise, *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)(*en banc*); *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007), an application for approval of a plea agreement, like an application for preliminary approval of class action settlements, requires a merits-based assessment (i.e., an "evaluations") of the agreement. Judge Norgle chose to defer the exercise of his discretion until the procedural irregularity he understandably thought existed was cured. Hence, the event on which GWBS relies for its claim of contractual invalidity has yet to occur.[10]

### E.

GWBS's alternative argument is that even if it is still bound by the settlement agreement, the plaintiffs are not entitled to specific performance requiring it to file a second motion for preliminary approval. That remedy requires: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or refusal of the defendant to perform his part of the contract. *Hoxha v. LaSalle Nat. Bank*, 365 Ill.App.3d 80, 85, 847 N.E.2d 725, 729 (1st Dist.

---

[10] The problem could easily have been eliminated if the parties had called the facts to the court's attention or refiled the motion for preliminary approval so that it made clear it sought approval of a settlement of the amended complaint.

15

2006). It is an exceptional remedy, appropriate only where the traditional criteria for injunctive relief have been satisfied, *cf., St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)(listing factors), and the terms of the of the contract are sufficiently specific to allow the precise drafting of an order. *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 637 (7th Cir. 2007); Restatement (Second) of Contracts § 362.

GWBS concedes there was a valid contract, and although it argues otherwise, a specific order might be fashioned that would not require continuing supervision with the inevitable strains on judicial resources. *TAS Distributing*, 491 F.3d at 637; *Walgreen Co.*, 966 F.2d at 276. An injunction, however, ought not issue where there is no need for one. *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). Of course, where there is no need, there is no irreparable harm, and thus no occasion to balance the harm the applicant will suffer if the injunction is denied against the harm the opposing party will suffer if it is granted. GWBS has already performed its initial and unconditional obligation to support the settlement agreement between it and the plaintiffs. It did so in its comprehensive August 22, 2007 brief in support of plaintiff's motion for preliminary approval of class action settlement. In that brief, which was based on the settlement agreement as it related to the amended complaint with its expanded class, GWBS argued that "[n]o credible reason exists to sustain Valley Forge's objection and disrupt the negotiated compromise of this action," and that "this settlement is in the best interests of the plaintiff class." (*Reply* at 1, 2).

Since nothing factually has occurred from then until now – other than GWBS's change of heart–that would prevent me from relying on that brief, there is no need to resort to the extraordinary remedy of a mandatory injunction to require GWBS to redo what it has already done. As the Supreme Court said long ago in *Brooklyn Life Insurance Co. of New York v. Dutcher*, 95 U.S. 269,

16

272 (1877), "[t]he law never requires an idle thing to be done." *Accord MX Group Inc. v. City Of Covington*, 293 F.3d 326, 344 (6th Cir. 2002); *Monmouth Inv. Co. v. Means*, 151 F. 159, 168 (8th Cir 1906). *Compare Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 484 (7th Cir. 2007)(eschewing "'empty formalit[ies]'").

F.

Since most cases in the federal system are settled rather than tried, *United States v. Dawson*, 425 F.3d 389, 393 (7th Cir.2005), there is an important federal policy encouraging the voluntary settlement of disputes without litigation. *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 995 (7th Cir. 2001). *Cf. Marek v. Chesny*, 473 U.S. 1, 5 (1985).[11] Not surprisingly, GWBS's August 22, 2007 reply brief in support of plaintiff's motion for preliminary approval stressed what it characterized as the "overriding public interest in settling and quieting litigation" and noted that that interest was "particularly true in class actions. " (*Reply Brief* at 10).

Unfortunately, GWBS has had second thoughts. At the oral argument on the plaintiff's motion to enforce the settlement agreement, it said that "Great Western does not think [the settlement] is a good idea anymore." But being "solemn undertakings," *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 469 (6th Cir. 2007), settlement agreements cannot be undone merely because one of the parties has had a change of heart. *Taylor v. Gordon Flesch Co. Inc.*, 793 F.2d 858, 863 (7th Cir.1986); *Collins, supra*. If the rule were otherwise, the policy favoring settlements and the principle requiring compliance with contractual obligations, *Farrington v. Tennessee*, 95 U.S. 679, 682 (1877), would be rendered illusory.

---

[11] Less than 2% of all dispositions of cases in recent years are the result of trials. The number continues to decline. *See* Mark Galanter, *The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts*, (ABA Symposium San Francisco Dec. 12-14, 2003); Patricia Lee Refo, *The Vanishing Trial*, 30 LITIGATION 2 (Winter 2004).

17

## CONCLUSION

In the context of this case, the answer to GWBS's argument that the August 23rd order put an end to the agreement is provided by Learned Hand:

> There is no more likely way to misapprehend the meaning of language- be it in a constitution, a statute, a will or a contract- than to read the words literally, forgetting the object which the document as a whole is meant to secure. Nor is a court ever less likely to do its duty than when, with an obsequious show of submission, it disregards the overriding purpose because the particular occasion which has arisen, was not foreseen. That there are hazards in this is quite true; there are hazards in all interpretation, at best a perilous course between dangers on either hand; but it scarcely helps to give so wide a berth to Charybdis's maw that one is in danger of being impaled upon Scylla's rocks.

*Central Hanover B. & T. Co. v. C.I.R.*, 159 F.2d 167, 169 (2nd Cir. 1947). *See also* 11 Williston on Contracts, §32.9 (1999)(Richard A. Lord, 4th ed.).

Plaintiffs' motion to enforce the settlement agreement [#109] is DENIED insofar as it seeks to compel GWBS to file a motion seeking preliminary approval of the settlement agreement. The plaintiffs may, if they choose, file a renewed motion for preliminary approval of the agreement and I shall consider GWBS's reply brief with that motion. Plaintiffs may not rely on the previously filed motion for preliminary approval and a renewed motion should respond to any arguments advanced by Valley Forge in its opposition to the earlier filed motion for preliminary approval to the extent that they implicate the factors that a court must evaluate under Rule 23 in deciding whether to approve a class action settlement agreement.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/3/08